IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MICHAEL BROOKS FAIRCHILD**                                                    **PLAINTIFF**

**VERSUS**                          **CIVIL ACTION NO. 1:15cv324-HSO-RHW**

**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**

<u>**REPORT AND RECOMMENDATION**</u>

Counsel[1] for Plaintiff Michael Brooks Fairchild filed this action September 28, 2015, seeking judicial review of the denial of Fairchild's claim for disability insurance benefits and supplemental security income (SSI) payments under, respectively, Titles II and XVI of the Social Security Act. In this Court, Fairchild challenges the qualifications of the consultative examiner, and contends that Administrative Law Judge (ALJ) Wallace Weakley erred in failing to rule on Plaintiff's objection to the consultative examiner's qualifications, and in failing to properly consider the opinions of Fairchild's treating physician.

<u>Facts and Procedural History</u>

Fairchild filed applications for disability and SSI in May 2012, alleging he had been disabled since June 30, 2010, at age 54,[2] due to neck and shoulder injuries, back pain and Hepatitis C. [12, pp. 34, 54-63, 101] The applications were denied initially on October 8, 2012, and on reconsideration January 4, 2013. [12, pp. 54-62] Fairchild requested a hearing before an ALJ, claiming his conditions prevent him from obtaining or sustaining any gainful employment. [12, pp. 73]

ALJ Weakley conducted a hearing on Fairchild's claim on March 4, 2014, receiving testimony from Fairchild and Vocational Expert Kelly Hutchins. [12, pp. 26-53] Fairchild is

---

[1]Fairchild has been represented by counsel since at least the March 4, 2014 hearing. [12, p. 26]

[2]Fairchild was born in January 1955.

6'2" tall, weighs 201 pounds, and is right-handed; he has a tenth grade education and past work history as a carpenter, a self-employed lawn service worker, a painter, and a truck driver/shop worker. [12, pp. 131-137] He reported in June 2012 that he lived with family in a FEMA cottage, and the conditions of which he complains affected his sleep ("can't get comfortable") and social activities ("no sex, no fun"), but presented no problem with personal care. He further reported that he tends to his own finances, prepares frozen dinner meals daily, shops for groceries once a month and can do cleaning and laundry, though he also states he does no house or yard work. He watches television every day, and stated he can lift 20 pounds and walk about a block before stopping to rest. He claims his conditions affect his ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs,[3] see,[4] and complete tasks. Fairchild drives himself wherever he needs to go. [12, pp. 138-45]

    Fairchild testified he has a valid drivers license, and drove himself to the March 2014 hearing. He stated he is divorced, has no children under 18, and he and a cousin live together. He reiterated that he has a tenth grade education, added he had training as a mechanic, and that his last job was driving a dump truck for about a year. He testified he stopped working in December 2009 after injuring his neck when he was jostled about while sitting in the cab of the truck, when mud fell on the truck, kicking the back of truck up and then to the ground. He testified he had earlier injured his back, pre-Katrina,[5] when he slipped while working on a dredge. When the ALJ pointed out that his earnings records indicate he worked into 2010, Fairchild stated that he was cutting grass with a riding lawn mower. Before truck-driving, Fairchild had done construction and maintenance work. [12, pp. 34-38]

---

[3]Fairchild testified at the hearing that he can climb stairs. [12, p. 49]

[4]The undersigned saw no mention of any vision problems in the administrative record.

[5]Hurricane Katrina struck the Gulf Coast August 29, 2005.

Fairchild testified he gets up around 6:00 a.m., depending on how he sleeps, and goes to bed after the news at 10:30 or 11:00 p.m. During the day, he sweeps and cleans up, and sometimes does the dishes and the laundry. He takes care of his personal grooming, but does no exercise.[6] He watches television eight to nine hours a day. Fairchild states he can lift 15-20 pounds, stand a half hour to an hour before has to sit; and sit 1-2 hours at a time. He contends he cannot drive a dump truck because it requires that he get out and "check the barder" and jump on the hood, and his back hurts when he climbs. He has arthritis which comes and goes. [12, pp. 44-49] He testified since Hurricane Katrina, he has been seeing Dr. Talbot monthly for lower back and neck pain. [12, pp. 42-44]

Vocational Expert Kelly Hutchins reviewed Fairchild's past relevant work history as a dump driver, which is considered medium work with a skill level of 2; in construction, which is heavy work with a skill level of 4; and in lawn service which is medium work with a skill level of 3. Ms. Hutchins testified one of Fairchild's age, educational level and work history, who is capable of a full range of medium work with non-exertional limitations, who can sit six hours per day and stand six hours per day, remains capable of working as a dump truck driver and lawn service worker. [12, pp. 51-52]

On May 9, 2014, ALJ Weakley issued a seven-page decision finding Fairchild has not been under a disability as defined in the Social Security Act from June 30, 2010 through the date of the decision. [12, pp. 15-21] The Appeals Council denied Fairchild's request for review on July 27, 2015 [12, pp. 4-87], and Fairchild filed the action now before the Court.

Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings,

---

[6]In September 2012, Fairchild reported he regularly exercised three to four times per week. [12,p. 277]

and whether such findings are reached through the application of correct legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F.2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). The Commissioner's decision "is accorded great deference and will not be disturbed unless the

reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

## Analysis

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A). Fairchild had the burden to prove a disability which precluded him from engaging in substantial gainful work. *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Weakley applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Step One requires determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work that involves significant physical or mental activities and is usually done for pay or profit. The ALJ found Fairchild has not engaged in such activity since June 30, 2010. At Step Two, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, which meets the duration requirement and is severe, *i.e.*, which significantly limits his ability to perform basic work activities. ALJ Weakley found Fairchild has severe impairments of degenerative disc disease of the cervical spine and lumbago, but other problems for which he received medical treatment were not severe, *e.g.*, Fairchild's September

2012 fractured finger required no "additional treatment after that time and there is no evidence of any resulting limitations;" that Fairchild's statements alone about Hepatitis C are insufficient to establish the presence of a medically determinable impairment, and he failed to submit evidence of signs, symptoms and laboratory findings to support his allegation regarding that condition– "The objective medical evidence shows that laboratory testing ... on October 5, 2012, revealed a normal total bilirubin level."  The ALJ also found any claimed mental impairment not severe as there is no evidence of any treatment by a mental health physician or at a mental health facility, which indicates the condition is controlled with the medication for anxiety which Fairchild's primary care physician prescribes.  [12, pp. 17-18]  Furthermore, as the ALJ found, the state agency physician opined that Fairchild's anxiety was not severe [12, pp. 219-232], and there is no evidence contradicting this opinion.  The undersigned finds the record evidence to which the ALJ cites in his opinion provides substantial evidence supporting these findings.

      Step Three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Unless the impairment/combination of impairments is of such severity and meets the duration requirement, the analysis continues to Step Four. Judge Weakley found Fairchild does not have an impairment or combination of impairments which meets or medically equals the severity required to meet or equal a listed impairment.

      At Step Four of the evaluation, the ALJ must determine (1) the claimant's residual functional capacity, *i.e.*, his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments, and (2) whether he can still perform the requirements of his past relevant work.  If claimant can perform the requirements of his past relevant work, he is not disabled, and the inquiry ends there.  The ALJ found Fairchild remains capable of

performing his past work as a dump truck driver or lawn service worker, thus the analysis did not proceed to Step Five.

Based upon the entire record, including all Fairchild's alleged symptoms to the extent they are reasonably consistent with objective medical evidence and other evidence, as well as opinion evidence, ALJ Weakley found Fairchild's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Fairchild's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. The ALJ found Fairchild's allegation of total disability inconsistent with both his own testimony that he has looked for work and with the "minimal clinical findings" and lack of limitations given by any treating physician.[7] The ALJ also pointed out that medical records for treatment Fairchild received for various conditions contain no complaint about his neck or back, or mention those conditions only by way of history, *e.g.*, the 2012 records for treatment of his finger fracture and leg abscess. [12, pp. 196-203, 174-186] The Court notes that a September 2012 history checklist actually denied any back disorder, hepatitis, painful joints, depression or nervous disorder. [12, p. 276] Again, the ALJ's record references support his findings.

Judge Weakley noted that Fairchild sees his family practitioner, Dr. Talbot, on a monthly basis and is prescribed medication for chronic pain due to cervicalgia (neck pain) and lumbago (low back pain). Dr. Talbot's records show clinical findings of some decreased range of motion of the cervical spine, and cervical and lumbar tenderness, but the ALJ noted that throughout his records Dr. Talbot indicates Fairchild's pain is moderate, and on his last visit in February 2014, Fairchild reported the medications were helping. The Court notes that Fairchild

---

[7]In fact, the ALJ noted before the hearing that Fairchild's prehearing memorandum made no mention of any examining or treating physician's placing limitations or restrictions on his activity. When the ALJ inquired of Fairchild's counsel whether there is anything in the record restricting Fairchild's activities, Counsel responded, "No, sir. Not that I know of." [12, p. 33]

reported the medications were helping on each visit documented in these records. [12, pp. 207-218, 280-327] The ALJ stated, "the inability to work without some pain and discomfort is not necessarily determinative of the issue of disability in a social security case..., the issue is whether the claimant's pain is of such severity as to preclude all work activity." [12, p. 20]

Dr. Tracy Roth's August 2012 consultative examination also stated clinical findings of some limitation in range of motion in the neck, and some tenderness. Lumbar x-rays and findings related to Fairchild's upper and lower extremities were normal, and Fairchild had normal range of motion of the back, hips, knees, shoulders, elbows, forearms, wrists, hands and fingers. [12, pp. 188, 191-192] Dr. Roth diagnosed chronic lower back pain, and neck pain with mild decreased range of motion. Based on her examination, Dr. Roth concluded Fairchild could stand, walk and/or sit up to six hours, lift and carry 50 pounds occasionally and 25 pounds frequently, and had no postural, manipulative or workplace environmental limitations. [12, pp. 187-192] The ALJ found this assessment consistent with the record as a whole. The undersigned finds the record demonstrates the ALJ fairly considered and evaluated all the evidence in making the above findings.

Discussion

Fairchild contends the ALJ erred in failing to respond to his objections that consultative examiner Tracy Roth, M.D., was not a "qualified medical source." Specifically, Plaintiff's counsel argued the only "Dr. Tracy Roth" counsel's internet search revealed in Mississippi has a specialty in obstetrics and gynecology. This, he contends, establishes that Dr. Roth lacked the requisite training and experience to perform the internal/comprehensive medical examination authorized by the Social Security Administration.[8]

---

[8]The SSA authorized an internal/comprehensive medical examination and x-rays. [12, p. 187] The radiologist interpreting the x-rays found, "Normal lumbar spine alignment. No fracture or subluxation. Intervertebral disc spaces well preserved," and identified no lumbar spine abnormality. [12, p. 188]

The pertinent Social Security regulations regarding consultative examinations in disability cases provide:

> (a) We will purchase a consultative examination only from a qualified medical source. The medical source may be your own physician or psychologist, or another source. If you are a child, the medical source we choose may be a pediatrician. For a more complete list of medical sources, see § 404.1513.
> (b) By "qualified," we mean that the medical source must be currently licensed in the State and have the training and experience to perform the type of examination or test we will request; the medical source must not be barred from participation in our programs under the provisions of § 404.1503a. The medical source must also have the equipment required to provide an adequate assessment and record of the existence and level of severity of your alleged impairments.
> (c) The medical source we choose may use support staff to help perform the consultative examination. Any such support staff (e.g., X–ray technician, nurse) must meet appropriate licensing or certification requirements of the State. See §404.1503a.

20 C.F.R. §§ 404.1519g; 416.919g.  Fairchild does not contest that Dr. Roth is a medical doctor licensed in the state, but argues *because* she is an OB/GYN she lacks the requisite training and experience required to conduct an internal/comprehensive medical examination.  [13, p. 5] Fairchild cites no authority to support this contention, nor does he challenge any particular medical finding by Dr. Roth.[9]  Nonetheless, Fairchild argues the Commissioner's decision must be reversed because Dr. Roth was not qualified to perform the consultative examination upon which the ALJ relied, and the ALJ failed to rule on Plaintiff's objection on this point.  The undersigned finds no evidence that Dr. Roth lacked the training and experience to perform an internal/comprehensive medical examination and Fairchild has presented no authority to support his contention on this point.

---

[9]Dr. Roth's diagnoses of chronic lower back pain and neck pain with mild decreased range of motion appear consistent with the findings of Dr. Talbot who, according to the Commissioner, is a general practitioner with no particular specialty.  [12, pp. 190-192]

The undersigned is further of the opinion that the lack of a ruling on Fairchild's objection to Dr. Roth was, at most, harmless error.[10]  For the reasons which follow, the undersigned finds it "inconceivable that the ALJ would have reached a different conclusion" on the record in this case.  *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).  First, it bears reiterating that Fairchild had the burden of proving he is disabled through the first four steps of the sequential analysis, including the burden to prove he was unable to do his past work.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988).  Before the hearing even started, ALJ Weakley noted, and Fairchild's counsel acknowledged, that there was nothing in the record where any examining or treating doctor placed limitations or restrictions on Fairchild's activities of daily living.  [12, p. 33]  Fairchild's primary care doctor placed no limitations on sitting, standing, walking, lifting, carrying, pushing, and pulling.  Instead, he simply advised, without further explanation, that Fairchild avoid "strenuous physical activity."  Dr. Talbot's records contain neither examinations, tests or clinical findings which note physical limitations.  As the Court stated in *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988):

> The duty of an appellate court when reviewing an agency decision regarding disability benefits and supplemental security income benefits is not to reweigh the evidence, but merely to determine if there is substantial evidence in the record to support the agency's decision." *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir.1980); 42 U.S.C.A. §§ 405(g), 1383(c)(3). Moreover, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988).

Procedural improprieties constitute a basis for remand "only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."  *Id.*  The

---

[10]An exchange in the record leads the undersigned to find it likely that the ALJ would have overruled the objection had he ruled on it.  Although Plaintiff accepted Ms. Hutchins as a vocational expert, he objected to her testifying regarding job numbers on grounds that Plaintiff did not "feel that she is qualified as far as getting those numbers."  The ALJ stated he would require case law or regulations to support such an objection before he would consider it.  [12, pp.49-50]

undersigned finds substantial evidence supports the ALJ's finding of non-disability. It is inconceivable that the ALJ would have found differently based on a record bereft of *any* medical evidence of restrictions or limitations attributable to Fairchild's impairments. The "suffering of some impairment does not establish disability; a claimant is disabled only if [he] is 'incapable of engaging in *any* substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The existence of an impairment neither equates to, nor requires a finding of, disability under the Act. See *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989).

## RECOMMENDATION

Based upon consideration of the entire record of proceedings below and controlling law, the undersigned is of the opinion that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards. The undersigned therefore recommends the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file with the Clerk any written objections to it. Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection. An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual

finding or legal conclusion accepted by the District Court to which he did not object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      Signed, this the 13th day of January, 2017.

                                        /s/ *Robert H. Walker*
                                        ROBERT H. WALKER
                                        UNITED STATES MAGISTRATE JUDGE